THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, v. RAFAEL CALERO PELEGRINA, Defendant and Appellant.

No. 12365. Argued December 5, 1947.—Decided March 5, 1948.

*Héctor Reichard* and *Benicio Sánchez Castaño* for appellant. *Luis Negrón Fernández, Attorney General, J. Rivera Barreras, Prosecuting Attorney,* and *Alberto Picó Santiago. Assistant Prosecuting Attorney,* for appellee.

Mr. Justice De Jesús delivered the opinion of the Court.

Appellant was sentenced to one and one-half year's imprisonment in jail and to pay a fine of $5,000 for the violation of the Supplies Act.

The assignment of errors is directed, in the first place, against two orders of the lower court: (*a*) that which permitted the district attorney to file a second information after having ordered the dismissal of the first one; and (*b*) that which authorized him to amend the second one, after defendant's arraignment but before he entered his plea.

The first information was filed on July 31, 1946, but when the case was called for trial and the district attorney noticed that the information did not state the place where the offense was committed, he sought its dismissal in order to file a new information unless the defendant had no objection to its amendment. The defendant stated that he did not object to the dismissal and the court so ordered. The district attorney, addressing the court immediately said: "Then, your Honor, may it please the court, the district attorney asks leave to file the information in the case of *People* v. *Rafael Calero Pelegrina,* for a violation of the Supplies Act. The district attorney verifies and files this information in open court." The judge rendered forthwith the following decision: "The filing of this information is permitted. Since the defendant is present we shall proceed to the arraignment."

The defendant moved the court to postpone the arraignment and to grant him a term of two days, at least, to object to the filing of the new information. He rested his petition on the ground that since the offense was a misdemeanor, the dismissal of the first information barred the filing of the

second. His motion was denied and thereupon the arraignment took place. The defendant then moved for a period of five days to enter his plea. The court only granted an hour because the averments of the first and second informations were virtually the same with the exception of the place where the offense was committed which the first one failed to allege. When the case was again called to trial and before the defendant had entered his plea, the district attorney discovered that the second information did not state the date of the commission of the offense. He then asked leave to amend it by inserting the date, that is, July 31, 1946. The judge directed the district attorney to dictate the amendment and indicate the place where it should be inserted. It was so done and the court immediately rendered the following decision: "The court admits the amendment. The information is considered as amended as sought by the district attorney and since the amendment has been dictated in open court by the district attorney and it has been heard by the defendant and his counsel, the defendant is now in a position to enter his plea."

I

██ We shall first discuss whether the lower court erred in admitting the second information. Appellant cites §§ 451 and 452 of the Code of Criminal Procedure [1] in support of his contention to the effect that the dismissal of the first information bars the filing of the second.

The dismissal herein is not contemplated by § 448 *et seq.* of the Code of Criminal Procedure and therefore § 452 of that Code is not applicable. This Section by its own lan-

---

[1] Sections 451 and 452 of the Code of Criminal Procedure prescribe:

"Section 451.—The court may, either of its own motion or upon the application of the prosecuting attorney and in furtherance of justice, order an action on an information to be dismissed. The reasons of the dismissal must be set forth in an order entered upon the minutes.

"Section 452.—An order for the dismissal of the action, as provided in this chapter, is a bar to any other prosecution for the same offense if it is a misdemeanor, but it is not a bar if the offense is a felony."

guage is limited to dismissals under Chapter VI of Title XI of said Code.[2] *García v. District Court, ante,* p. 20; *People v. Muñoz,* 57 P.R.R. 212, 216. Indeed, it is inconceivable that because the district attorney, through oversight or otherwise, committed an error like that in preparing the information, the misdemeanor should stand unpunished simply because an amended information cannot be filed unless defendant himself, acting in such a case against his own interest, should demur to the information. For this reason we have held that the situation which arises when the district attorney moves for a dismissal in order to file an amended complaint is the same as that which arises when the court, in sustaining a demurrer, orders that a new information or complaint be filed, provided that, as in this case, the offense charged in the original information or complaint is not changed. *People v. Muñoz, supra.*

But the defendant does not rely exclusively on § 452. For in the event that we should decide that this Section was not applicable, he invoked § 157[2] of said Code. He claims that according to the latter Section, the second information should be dismissed because in decreeing the dismissal of the first one the court did not order a new information to be filed. In support of his contention the defendant cited *Ex parte Williams,* 48 Pac. 499 (Cal. 1897). In this case the lower court sustained a demurrer "with leave to the district attorney to file a new information." In a petition for habeas corpus filed by Williams in the Supreme Court of California he alleged that pursuant to § 1008 of the Penal Code of that

---

[2] This Chapter contains §§ 448 to 452 inclusive.

[3] Section 157 of the Code of Criminal Procedure prescribes:

"If the demurrer is allowed, the judgment is final upon the information demurred to, and is a bar to another prosecution for the same offense, unless the court, being (is) of the opinion that the objection on which the demurrer is allowed may be avoided in a new information, and directs a new information to be filed; *Provided,* That after such order of resubmission the defendant may be examined before a justice of the peace and discharged or committed by him, as in other cases."

300

State—substantially similar to § 157 of our Code of Criminal Procedure—since the district attorney was not ordered to file a new information, it followed that the information must be dismissed and the prisoner discharged, as the court merely extended *leave* to file a new information.

Construing § 1008 of the Penal Code that court held that said Section plainly contemplates that the filing of a new information, after demurrer is sustained, shall rest in the discretion of the court, and not in the discretion of the district attorney; that the new information should be filed upon the court's order; that in that case instead of so doing, and without authority of law, the court merely extended leave to the district attorney to file such information, leaving the decision of whether or not it should be filed, to rest entirely in the discretion of that officer; that under the order of court directing the filing of a new information, the district attorney, for his failure so to do, would be guilty of misfeasance and would be punished accordingly; that on the contrary, under the permissive order, if the district attorney fails to file the new information, he would violate no duty and be amenable to no punishment. Since the Supreme Court was of the view that the order rendered by the lower court in connection with the new information was merely permissive and not mandatory, it held that it had been rendered without legal authority, and therefore, granted the petition for habeas corpus and ordered that the petitioner be discharged.

In 1911 the same question was again brought before the Supreme Court of California in *Ex parte Hughes,* 117 Pac. 437, (Cal. 1911). A second information was filed against Hughes on an order granting leave to file a demurrer and stating that the court "was of the opinion that a new information should be filed, which would do away with the objection and be sufficient in all respects." Hughes filed a habeas corpus petition in the Supreme Court of California on the ground, precisely, that the decision of the lower court

did not order, but merely granted leave to the district attorney to file another information. He invoked *Ex parte Williams*, (Cal.), *supra*. The petition for habeas corpus was denied and the court said:

"Here was the exercise of the judicial power, which, as has been said, the law contemplates the court—and not the district attorney—should make. This judicial power having in fact been exercised by the court, a substantial compliance with the statute is shown. The writ is therefore discharged, and the prisoner remanded."

As it may be seen the fact that the lower court said that a new information *should be filed* was construed by the Supreme Court as tantamount to the exercise of discretion by the court and it distinguished that case from the *Williams* case, (Cal.), *supra*.

The case at bar may be distinguished from *Ex parte Williams*, (Cal.), *supra*. In this latter case leave was merely granted to the district attorney to file a new information. This officer was authorized to use his discretion as to whether or not he would file it. In the case at bar the district attorney, who had moved for the dismissal in order to file a new information, at the moment of decreeing the dismissal, asked leave to file it and he did so. The court forthwith issued the following order: "The filing of this information is admitted. Since the defendant is present we shall proceed to the arraignment." This order amounts to more than a mere leave. The court, having taken notice of the new information, exercised its discretion to permit its filing. Therefore, it substantially complied with § 157 of the Code of Criminal Procedure. In the instant case the position of the district attorney is stronger than in *Ex parte Hughes, supra*. There the lower court merely stated that in its opinion, a new information *should be* filed. Here the court, mindful of the information, was of the opinion that it should be admitted and ordered that since the defendant was present he should be arraigned.

A situation similar to the one of the present case arose in the Supreme Court of Nevada in *Ex parte Williams*, 186 Pac. 673 (Nev. 1920). There, Williams demurred to the information and the demurrer was sustained. The district attorney anticipating the result, had prepared a new information and as soon as the demurrer was sustained, asked leave of court to file it, which was granted. Counsel for the defendant then moved to dismiss the new information, upon the ground that it had been filed without legal authority. After argument, the motion was overruled. Thereupon the defendant filed a petition for a writ of *habeas corpus* in the Supreme Court of Nevada alleging that he was illegally restrained of his liberty inasmuch as the court at the time of sustaining the demurrer, had *granted leave* but not *directed* that a new information be filed. He invoked § 7101, Revised Laws of Nevada of 1912, which is substantially the same as § 157 of our Code of Criminal Procedure. He alleged that while the court might *direct* the filing of a new information it had no jurisdiction to *grant leave* to the district attorney to file it and cited, among other cases, *Ex parte Williams* (Cal.) *supra*. The Supreme Court of Nevada in dismissing the petition of habeas corpus distinguished the case of *Williams* (Cal.), *supra*, in the following terms:

"In the case at bar the district attorney, anticipating that the demurrer would be sustained to the first information, prepared a new information which he had in court when the order sustaining the demurrer was entered by the court, and immediately asked leave to file the same, which was granted, and the information was instantly presented and examined by the court, while in the California case in question the demurrer was sustained with leave to the district attorney to file a new one. So far as appears from the opinion in the Williams Case, the district attorney did not signify any desire at that time to so proceed. The reasoning of the court in that case does not apply to the situation presented in the instant case. There it was said that the order made was an attempt to transfer the duty of deciding, that if the district attorney failed to act, had he been directed to file a new information, he would have been guilty of

misfeasance or nonfeasance, but that, if he had refused to act under a permissive order, there would have been no liability—all of which is no doubt true.''

The *Williams* case (Nev.), *supra,* cannot be distinguished from the present case.

It is true that in *García* v. *District Court, supra,* the doctrine of *Ex parte Williams* (Cal.), *supra,* prevailed. In *García de Quevedo, supra,* the district court in sustaining a demurrer and dismissing two informations on February 27, 1947 did not direct anything with respect to the filing of new informations. On April 30, 1947 the district attorney, using his own judgment, and without intervention of the court, filed two new informations. The petitioner thereupon moved for the dismissal thereof on the ground that after a demurrer to an information is sustained, a new information may not be filed, unless the court *orders* that action, and that no such order of the court was made in said case. The district court overruled the motion saying in part, that `` . . . since this is a case in which the crime does not prescribe as it is a case against the public treasury, justice requires an order which is hereby made, with retroactive effect to the date of the order sustaining the demurrer for lack of a cause of action, granting *permission* to the district attorney to file a new information.'' (Italics ours.)

This Court, following *Ex parte Williams* (Cal.), *supra,* decided that assuming that such an order as that rendered in *García de Quevedo, supra,* might be entered *nunc pro tunc,* the order did not comply with § 157 of the Code of Criminal Procedure, and added: ``The statute specifically requires that the court direct, not permit, the district attorney to file a new information. The theory is that the court must use its own judgment and not leave the question of filing a new information to the discretion of the district attorney. The order must therefore be couched in mandatory rather than permissive language.''

304

We may readily see that the *Garcia de Quevedo* case, *supra,* is different from the case at bar. The legal effect of the order *nunc pro tunc* was to grant leave to the district attorney to file a new information retroactive to the date on which the demurrer was sustained. And this contravenes the provisions of § 157 of the Code of Criminal Procedure and is in conflict with the holding in *Ex parte Williams* (Cal.), *supra.*

In the instant case the district court did not err in overruling the motion to dismiss the second information. *Ex parte Hughes, supra; Ex parte Williams* (Nev.), *supra.*

## II

 We shall now determine whether the district court erred in permitting that the new information be amended to insert the date of the commission of the offense. We have already said that the decision rendered in this case was tantamount to ordering the filing of the new information. Since the latter was filed on August 6, 1946 the right to amend it stemmed from § 158 of the Code of Criminal Procedure.[4] There is a sharp contrast between §§ 157 and 158: The former requires an order—not a mere permission—in order that a new information be filed after the demurrer is sustained; the latter only requires permission to amend an information or complaint already filed. *Garcia v. District Court, supra.*

In the instant case the court granted permission to amend the second information. Our next step is to decide whether the amendment inserted changed the offense charged in the original information. If it did, we would have to decide that the court lacked jurisdiction to permit the amendment. Annotations in 7 A.L.R. 1516; 68 A.L.R. 928. But in the

---

[4] Section 158 of the Code of Criminal Procedure prescribes:

"If the court does not *permit* the information to be amended, nor directs that an information be filed, the defendant, if in custody, must be discharged, or if admitted to bail, his bail is exonerated, or if he has deposited money instead of bail, the money must be refunded to him." (Italics ours.)

present case the date is not an essential element of the offense. Although it is necessary to determine the question of prescription, this Court has repeatedly held that in criminal cases prescription is a matter of defense and, as such, should be alleged and proved by the defendant. *People* v. *Delgado,* 32 P.R.R. 70; *Morera* v. *District Court,* 55 P.R.R. 717. Cf. *People* v. *Serrano,* 66 P.R.R. 431.

The district court did not err in permitting the amendment to the new information.

## III

 It now follows, in logical order, to determine whether the district court erred in overruling the demurrer to the original complaint. The demurrer was predicated on a different ground from those alleged on appeal. The district court overruled it. Appellant now rests his demurrer on the ground that the information does not allege: (*a*) that the rice is a staple commodity; (*b*) that the defendant is a merchant who, as such, is contemplated by the Administrative Order and (*c*) that the purchaser Faustino Fantauzzi is a "consumer" who as such, may require the invoice or ticket to which said Order refers.

Administrative Order No. 8, as amended by No. 84, binds "every merchant or manufacturer whether a wholesaler, representative, agent or retailer, to give a clear and definite invoice in which there should be stated *the thing sold, the price per unit* and the *total value.*" (Italics ours.) The Administrative Order binds every retailer to give an invoice or ticket and orders every "consumer" to whom the retailer refused to give the invoice or ticket evincing his purchase, "to file a report or complaint before . . . the police or judges . . .".

We concede that the information would have been more specific if it had alleged that the defendant was a merchant. But the defendant did not see fit to ask for that specification.

We must presume that the court would have consented to grant it. *People* v. *Rivera,* 54 P.R.R. 346. If it would have refused to do so and if it were shown that substantial rights of the defendant had been prejudiced on that account, said refusal would have been reversible error.

We say nothing about the failure to allege that the purchaser was a "consumer" because we have no doubt that the Administrator never intended to grant to the "consumer" exclusively, the right to require an invoice. We are of the opinion that the word "consumer" as used in the Administrative Order, includes every purchaser, for in the majority of cases the one who ultimately consumes the article obtains it through some agent. To give it the strained interpretation propounded by appellant amounts to defeating the aim pursued in requiring the invoice in said cases. Such, we repeat, could not have been the intention of the Administrator. In any event, the information gave notice to the defendant that he had sold a bag of rice without giving the invoice and that is the gist of the offense. In *People* v. *Santos,* 67 P.R.R. 610, wherein it was not alleged that the rice was a staple commodity, and that the vendor was a merchant or that the purchaser was a consumer, it was held that an information charging that two pounds of rice were sold without giving an invoice, was sufficient.

Under the circumstances of the present case, the grounds on which the demurrer is predicated do not justify the reversal of the judgment.

## IV

■ Appellant complains that the lower court did not allow him a reasonable time to prepare his defense. According to the information, the offense was committed on July 31, 1946. On that same day the original information was filed and on August 6 trial was held. The record discloses that the point at issue was whether the defendant had sold one bag of rice and whether he had refused to give the required

invoice. If the defendant did not sell the rice, or if he did, if he gave the invoice, the six days that elapsed between the filing of the information and the holding of the trial, were sufficient time for him to prepare his defense. Furthermore, the defendant did not offer any evidence to contradict that of the district attorney.

## V

Appellant assigns as error the fact that the proceedings in this case were commenced on the initiative of the district attorney. He alleges that pursuant to § 13(b) of the Insular Supplies Act, as amended by Act No. 493 of April 29, 1946 (page 1474), the Administrator should have certified the facts to the Attorney General, who, in his discretion, could have then instituted adequate proceedings. In effect, this Section insofar as pertinent reads thus:

"Whenever the Administrator believes that some person is subject to punishment under the provisions of this paragraph, he shall certify the facts to the Attorney General who, in his discretion, shall institute the proper proceedings."

This Section does not necessarily exempt the Attorney General and his assistant prosecuting attorneys from the duty imposed on them by § 64 of the Political Code,[5] to prosecute on their own initiative any offense committed against the laws of Puerto Rico. It could not have been the legislative intent to complicate and make more dilatory the administration of justice in proceedings for a violation of this Act, which, by its nature, requires speedy action in order to avert the evil which was aimed to repress. It would take

---

[5] Section 64 of the Political Code, in its pertinent part, prescribes:

"The Attorney General shall represent The People of Puerto Rico, either in person or through his assistants, or through any one of the district fiscals, in all suits and proceedings civil and criminal, to which it is a party,... *Provided, however,* That public prosecutions for crime, except as provided for in section 74 of the Political Code, may be instituted and conducted by the fiscal of the proper court without special authority from the Attorney General, but in all such cases the Attorney General may intervene in the public interest."

at least a more specific language in order to find that the legislative intent, as regards offenses against the Insular Supplies Act, is to confine the powers to prosecute conferred upon the Attorney General and his assistants, only to those cases which the Administrator might deem fit to certify to them. The administrator thus construed § 13(b) in his Administrative Order No. 84 which prescribed that every person prejudiced by some speculative practice and every consumer to whom the retailer refused to give a ticket of his purchase with the exact amount bought, the price per unit and the total value paid, should file a report or complaint before— among other officers—the police or judges.

We are of the opinion that this provision is merely directive and not mandatory or preceptive.

## VI

■ Appellant contends that the district court erred in weighing the evidence. The evidence for the government— the defendant did not introduce any—consisted in the testimony of Faustino Fantauzzi and of District Attorney Willis Ramos. The former testified that on July 31, 1946 he went to defendant's shop in ward Haguey, in Aguadilla, to purchase a bag of rice; that he asked for the invoice and the latter answered that he could not give it to him but that he would give him an order for his wife who would deliver him the bag of rice; that he went to defendant's house, showed the order to defendant's wife and she delivered the rice. The second witness testified that while he was carrying out the investigation of this case the defendant told him that he had not delivered the invoice and that he had no printed invoices. The district attorney presented the order [6] in evidence as well as Administrative Orders Nos. 8 and 84. The order is not an invoice for it does not comply with the require-

---

[6] The order reads thus:
"Llille: Give the bearer of this note a bag. Rafael."

ments of Administrative Order No. 84 as to the description of the article sold, the price per unit and the total value. It was merely an order for the delivery of an article which was not described. The evidence is sufficient to support the conviction.

## VII

 Lastly, appellant complains that the sentence is excessive. The penalty provided by the Insular Supplies Act by its § 13(b) as amended by Act No. 493 of April 29, 1946 is: Fine not exceeding $5,000 and imprisonment in jail for a term not less than three months nor more than two years and those cases where the violation involves the maximum price schedule, an additional fine shall be imposed equivalent to three times the amount involved in the prohibited business.

In *People* v. *Arce,* 67 P.R.R. 233, the violation consisted in refusing to sell 48 bags of rice—although he had sufficient amount of said article in stock—unless other goods, such as corn, potatoes, etc., were purchased from him. The sentence imposed by the district court was two years in jail and a fine of $5,000 plus costs. This Court held that the same was excessive and reduced it to four months in jail and a fine of $1,000 plus costs. And in *People* v. *Santos, supra,* where the violation consisted in having sold two pounds of rice at seventeen cents a pound and refusing to give an invoice, the same district court imposed a sentence of one year in jail and a fine of $1,000, plus costs. This Court also reduced it, for excessive, to three months in jail and a fine of $100 plus costs.

In view of the surrounding circumstances, we are of the opinion that the judgment appealed from is excessive. It is reduced to three months in jail, a fine of $300 plus costs. As thus modified it is affirmed.